UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

```
******************************************************************************
                                    *
UNITED STATES OF AMERICA,           *       CR 19-40033
                                    *
               Plaintiff,           *
                                    *              AMENDED
        -vs-                        *       MEMORANDUM OPINION
                                    *            AND ORDER
CALVIN W. PELICHET,                 *
                                    *
               Defendant.           *
                                    *
******************************************************************************
```

Calvin W. Pelichet ("Pelichet") filed a pro se motion for compassionate release pursuant to the First Step Act. (Doc. 49.)  The motion was held in abeyance pending exhaustion of administrative remedies, and the abeyance was lifted on September 21, 2020.  (Doc. 54.)  The Assistant Federal Public Defender (FPD) appointed to represent individuals who file pro se pleadings seeking relief under the First Step Act filed a supplement in support of Pelichet's motion for compassionate release. (Doc. 61.)  The government opposes the motion. (Doc. 66.)  A reply was submitted by the FPD.  (Doc. 67.)  For the following reasons the motion is granted.

## BACKGROUND

On September 4, 2019, Pelichet entered a plea of guilty to wire fraud in violation of 18 U.S.C. § 1343. Pelichet worked as a sales manager at All Around Sports, LLC ("AAS"), a business located Boise, Idaho. AAS partnered with schools to help them fund their athletic programs while providing advertising for the local merchants that supported those schools. AAS had a call center in which salespeople called businesses, municipalities, and governmental entities to try to sell advertisements. These advertisements were typically displayed on athletic posters for high schools located near the businesses making the purchase.

The Factual Basis Statement signed by Pelichet provides, in part:

On or about March 17, 2016, in the District of South Dakota and elsewhere,

>    the Defendant, Calvin W. Pelichet, a/k/a Calvin W. Pellichet, devised and intended to devise a scheme and artifice to defraud the Oglala Sioux Tribe ("OST"), and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises. Defendant did this by aiding and abetting others involved in the scheme to defraud. For the purpose of executing the scheme and artifice, Defendant did knowingly cause to be transmitted by means of wire communication in interstate commerce the signals and sounds, all in violation of 18 U.S.C. § 1343, to effectuate the withdrawal of funds from a banking account belonging to OST, at The First National Bank of Gordon in Gordon, Nebraska, to an account belonging to Defendant All Around Sports, L.L.C. ("AAS"), at Idaho Central Credit Union in the State and District of Idaho. The amount of the wire transfer was $12,100.
>    OST is a federally recognized tribe, headquartered in Pine Ridge, South Dakota, with its lands within the exterior boundaries of the Pine Ridge Indian Reservation. Oglala Lakota College and Oglala College Center are also on the reservation, respectively located in Kyle and Oglala, South Dakota, and both colleges are associated. At times relevant to this case, OST did not utilize electronic forms of payment to vendors; rather, after receiving an invoice from the vendor, OST paid its vendors only by paper check. As part of this scheme, an individual employed at Oglala Lakota College, not OST, was contacted by Defendant in order to fraudulently obtain authorization to unlawfully withdraw by wire funds belonging to OST, a governmental entity that operates independently from the colleges.

(Doc. 30 pp. 1-2.)

Pelichet was sentenced on November 18, 2019. He was 47 years old, and his criminal history points were largely determined by conduct he engaged in during his 20's. Pelichet had been on parole with the state of Idaho intermittently for years. He served almost a decade in prison for robbery from 2003 to 2013. He had been seemingly successful on parole after his release from prison in 2013 until he was taken into custody on a parole violation based on this federal wire fraud offense. He had a criminal history category of VI, but the Court concluded it overstated Pelichet's criminal history and departed down to a criminal history category of V. The base offense level under the Sentencing Guidelines was 7. A 10-level enhancement for the amount of loss was applied pursuant to U.S.S.G. § 2B1.l(b)(1)(F), resulting in an offense level of 17. There was a 3-level decrease for Pelichet's acceptance of responsibility. This equaled a base offense level of 14. An offense level of 14 and a criminal history category of V resulted in a guideline range of 33 to 41

months.[1]  The Court further departed and varied downward under U.S.S.G. § 5H1.6 (Family Ties and Responsibilities) and 18 U.S.C. § 3553(a) due to Pelichet's wife's chronic, debilitating illness.[2] Pelichet was sentenced to 24 months' imprisonment followed by 3 years of supervised release. (Doc. 47.)  Restitution was ordered in the amount of $157,450.  (*Id*.)  Pelichet did not appeal his sentence.

Pelichet is currently incarcerated at the correctional institution in Seattle, Washington (SeaTac FDC).  His projected release date is July 22, 2021.  Pelichet is 48 years old.  The supplemental briefs filed by the FPD explain that Pelichet suffers from a number of medical problems, including obesity, hypertension, Stage 2 chronic kidney disease, sleep apnea, gastro-esophageal reflux disease, and low back pain. (Doc. 61.) Pelichet argues that being incarcerated with these medical conditions makes him particularly vulnerable to COVID-19.  In support of this argument, he cites and attaches declarations from medical professionals discussing the risks of being incarcerated during the pandemic.[3]  To avoid this increased risk of contracting COVID-19 and developing serious complications, Pelichet asks the Court to reduce his sentence to time served and order his immediate release.

According to the BOP website, as of November 18, 2020, none of the inmates or staff members at SeaTac FDC are known to be currently positive for COVID-19. *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/.  No one there has died of COVID-19. (*Id.*)  Eight staff members and 48 inmates have recovered from the viral infection.  *Id.*

## DISCUSSION

Title 18, § 3582(c)(1)(A)(i), known as the "compassionate release provision" of the First Step Act, Pub. L. 115-391, 132 Stat. 5194, provides in relevant part:

---

[1] Prior to the departure from a criminal history category of VI to a category V, Pelichet's guideline range was 37 to 46 months' imprisonment.

[2] Unfortunately, Pelichet's wife, Molly Rigby, passed away on June 30, 2020.  (Doc. 60.)

[3] *See* Declaration of Dr. Chris Beyrer, Director of the Center for Public Health and Human Rights and Johns Hopkins (Doc. 61-1,"Beyrer Decl."); Declaration of Dr. Jonathan Golob, Assistant Professor at University of Michigan School of Medicine (Doc. 61-2, "Golob Decl."); Declaration. of Dr. Jaimie Meyer, Assistant Professor at Yale School of Medicine (Doc. 61-3, "Meyer Decl.").

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant* . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[4]

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Prior to passage of the First Step Act, compassionate release requests came to the Court "upon motion of the Director of the Bureau of Prisons." *United States v. Rodd*, 966 F.3d 740, 745 (8th Cir. 2020). Now, a defendant may bring his or her own motion with the Court if administrative remedies have been exhausted. *Id.* at 744.

## I. Administrative Exhaustion

A district court may grant a sentence reduction upon motion of the defendant only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). That requirement is satisfied here. On May 20, 2020, Pelichet submitted an Inmate Request for Compassionate Release Consideration based on the incapacitation of his spouse. (Doc. 52, Exhibit A.) On May 21, 2020, Pelichet submitted a request for compassionate release based on his own medical conditions and increased risk of COVID-19. (Doc. 52, Exhibit B.) On July 8, 2020, the warden denied Pelichet's requests for a reduction in sentence. (*Id*., Exhibit C.) As more than thirty days have elapsed from the date that Pelichet submitted his requests to the warden, the Court has jurisdiction to consider the motion. *See United States v. Morehouse*, 2020 WL 2836188, at *2 (D.S.D. June 1, 2020) (Judge Karen E. Schreier) (motion for compassionate release is ripe for review where defendant submitted his request to the warden and the warden denied the request); *United States v. Harris*, 812 Fed. Appx. 106, 107, 2020 WL 4048690, at *1 (3rd Cir. July 20, 2020) (reversing district court's dismissal for failure to exhaust after government conceded that

---

[4] 18 U.S.C. § 3582(c)(1)(A)(ii) does not apply because Pelichet is 48 years old. He would need to be at least 70 years old to qualify for compassionate release consideration under Section (ii).

defendant was not required to completely exhaust the administrative remedy process after warden denied his compassionate release request).

## II. Extraordinary and Compelling Reasons

To be eligible for compassionate release, a prisoner must show that "extraordinary and compelling reasons" warrant such a reduction in sentence and that the reduction is "consistent with applicable policy statements" issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Congress did not define what constitutes "extraordinary and compelling reasons." Congress elsewhere required the Commission to issue a policy statement "regarding . . . the appropriate use" of Section 3582(c), to include "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied." 28 U.S.C. § 994(a)(2)(C), (t). Since the passage of the First Step Act, the Sentencing Commission has not yet updated its policy statements related to compassionate release, and the Sentencing Commission has not clarified what "extraordinary and compelling might mean," under the First Step Act.[5] *Rodd*, 966 F.3d at 746. Thus, the Commission's Guidelines, formulated before the First Step Act was passed and well before the COVID-19 pandemic, still address motions for compassionate release being considered by the BOP Director. Those Sentencing Guidelines provide that, "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)," the district court may reduce a defendant's term of imprisonment "if, after considering the factors set forth in 18 U.S.C. 3553(a)," the district court determines that –

(1)
  (A) extraordinary and compelling reasons warrant the reduction; or

  (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

---

[5] In *Rodd*, the Eighth Circuit observed that since the Sentencing Commission lacks a quorum to amend the Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to compassionate release motions brought by defendants in the near future. *Rodd*, 966 F.3d at 746 n.7 (citing *United States v. Beck*, 425 F.Supp.3d 573, 579 n.7 (M.D.N.C. 2019)).

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

As noted by the Eighth Circuit in *Rodd*, 966 F.3d at 746–47, the commentary to § 1B1.13 identifies four categories that constitute "extraordinary and compelling reasons warrant[ing] the [sentence] reduction," as that term appears in U.S.S.G. § 1B1.13(1)(A):

(A) <u>Medical Condition of the Defendant</u>.

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis. of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—
  (I) suffering from a serious physical or medical condition,
  (II) suffering from a serious functional or cognitive impairment, or
  (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from Which he or she is not expected to recover.

(B) <u>Age of the Defendant</u>.  The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) <u>Family Circumstances</u>.
(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) <u>Other Reasons</u>.  As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, application note 1(A)-(D).

The Eighth Circuit has declined to address whether district courts are bound by the Sentencing Commission's examples in this policy statement when considering a prisoner's compassionate release motion under the First Step Act. In *Rodd*, the Eighth Circuit noted that "[w]hile some courts adhere to the pre-First Step Act policy statements, other courts have ruled that the pre-First Step Act policy statements are inapplicable, and that a judge has discretion to determine, at least until the Sentencing Commission acts, what qualifies as extraordinary and compelling reasons." *Rodd*, 966 F.3d at 745. The Court said it wasn't necessary to decide whether or not U.S.S.G. § 1B1.13 applies because the district court had assumed that Rodd's health and family concerns constituted extraordinary and compelling reasons making him eligible for compassionate release under U.S.S.G. § 1B1.13, and still denied his motion after considering the § 3553(a) sentencing factors. *Id.* at 747–48.

In *United States v. Brown*, 411 F.Supp.3d 446 (S.D. Iowa 2019), the district court judge, Judge Robert Pratt, explained how some district courts have concluded they should rely only on the Sentencing Commission's pre-First Step Act guidelines regarding compassionate release, while other district courts also look to the BOP Program Statement written for the old law, and will only grant a motion for compassionate release under the same circumstances as the BOP would have prior to the First Step Act. *Id.* at 450. Judge Pratt described why it is his opinion that Congress intended to increase the use of compassionate release, and by amending § 3582 to allow defendants to motion district courts directly for compassionate release even after the BOP denies their petition, Congress intended to give district judges more discretion "to consider the vast variety of circumstances that may constitute 'extraordinary and compelling.'" *Id.* at 451.

In this district, Judge Lange also has held that district courts are not limited by circumstances described in U.S.S.G. § 1B1.13, even if it applies to motions for compassionate release brought under the First Step Act. *See United States v. Dillabaugh*, 2020 WL 3402392, at *3 (D.S.D. June 19, 2020) (holding that the "discretion given to the Director of the BOP in § 1B1.13 comment note 1(D), also allows federal judges to consider 'extraordinary and compelling reason[s] other than' those specifically described").

The Second Circuit is the only circuit that has addressed the issue. That court recently ruled that compassionate release motions brought by prisoners pursuant to the First Step Act are not

7

limited by the guidance in U.S.S.G. § 1B1.13. *United States v. Brooker*, 97 F.3d 228 (2d Cir. 2020). After stating all of the reasons for its conclusion, including the history and text of the First Step Act and Guideline § 1B1.13, the Second Circuit stated:

> For all of these reasons, the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.

*Brooker*, 97 F.3d at 237.

This Court agrees with the reasoning of Judge Pratt, Judge Lange and the Second Circuit, and holds that a district court may use its discretion when it is considering the "extraordinary and compelling reasons" for a compassionate release. With the understanding that it is not limited by Guideline § 1B1.13, the Court will look to the Sentencing Commission's commentary notes for guidance. *See Rodd*, 966 F.3d at 745 (noting that the district court first analyzed the prisoner's motion under the commentary to § 1B1.13 to determine whether he satisfied the "extraordinary and compelling" reasons for compassionate release).

Pelichet argues that his health conditions and incarceration during the COVID-19 pandemic are "extraordinary and compelling reasons" under U.S.S.G. § 1B1.13, Application Note 1(D). Compassionate release may be appropriate under subsection (D) where "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, application note 1(D). This final provision is often called the "catch-all" provision. In its present version, subdivision (D) leaves identification of "other" extraordinary and compelling reasons to the BOP Director. *See id*. But now that the First Step Act allows inmates to move the Court for compassionate release without the BOP's support, it is unclear what other reasons can be the basis for compassionate release. Judge Schreier recently noted that "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Morehouse*, 2020 WL 2836188, at *2 (D.S.D. June 1, 2020.) In *Morehouse*, Judge Schreier considered the defendant's argument that his circumstances warranted relief under this "catch-all" provision in application note 1(D) because "his medical conditions put him at high-risk if he

contracts COVID-19." *Id.* Finding that the defendant's medical conditions were being controlled and that the BOP's response to the pandemic at the Yankton FPC was adequate,[6] Judge Schreier held that the defendant's circumstances did not warrant a sentence reduction under U.S.S.G. § 1B1.13, application note 1(D). *Id.* at *3-4

Judge Lange has also considered whether health issues, combined with the COVID-19 pandemic generally, constitute extraordinary and compelling reasons for compassionate release under the "catch-all" phrase in U.S.S.G. § 1B1.13, application note 1(D). He observed:

> There can be no doubt that the effects of the global COVID-19 pandemic are extraordinary, and that the disease in some situations may be an "other reason" to grant compassionate release under § 1B1.13 comment note (D). The illness and the potential for its spread has affected the daily life of nearly every American citizen and has resulted in massive disruptions to the economy. Despite these drastic effects, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." The question becomes whether [defendant's] medical conditions . . . combined with the crowded conditions of confinement justify compassionate release.

*United States v. Frost*, 2020 WL 3869294, at *4 (D.S.D. July 9, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Adopting this reasoning, this Court concludes that it has discretion to consider whether Pelichet's health conditions and being imprisoned during the COVID-19 pandemic present an extraordinary and compelling basis for a sentence reduction. *See also Brooker*, 976 F.3d at 238 (noting that district courts around the country have used the coronavirus pandemic "as a justification for granting some sentence reduction motions").

The Centers for Disease Control and Prevention (CDC) has recognized that individuals suffering from obesity[7] (a BMI of 30 but less than 40) have an increased risk of developing a severe illness if they contract COVID-19. *See People with Certain Medical Conditions*,

---

[6] When Judge Schreier issued her opinion, there had been no positive COVID-19 cases at the Yankton FPC. *Morehouse*, 2020 WL 2836188, at *2.

[7] The CDC recently added a separate category for "severe obesity," defined as a BMI of 40 or higher.

9

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last reviewed November 18, 2020). The CDC also provided a list of medical conditions that "might" put a person at an increased risk of severe illness from COVID-19. *Id.* On October 6, 2020, being overweight (BMI of 25 but less than 30) was added to these medical conditions. *Id.*

The government does not disagree that obesity places individuals at an increased risk for more severe complications from a COVID-19 infection. In other cases before this Court, the government acknowledged obesity is "'a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover,' U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that the inmate's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished, within the environment of a correctional facility, by the chronic condition itself." (*United States v. Vega*, CR03-40081, Doc. 158, p. 8.) The government argues, however, that Pelichet has failed to prove he is obese because the BOP medical records provided in this case do not list obesity as a medical diagnosis. The government agrees that the BOP calculated Pelichet's BMI as 33.6 in March 2020 (Doc. 57, p. 15), but it contends it is based on a weight from seven months ago. (Doc. 66, p. 8.) There is no showing that Pelichet has lost weight since then. Given that Pelichet's BMI exceeds the CDC's risk category of 30, this condition increases his susceptibility to serious illness from COVID-19.

Pelichet's records also state that he has chronic kidney disease Stage 2.[8] (Doc. 57, p. 11.) The government argues that because this notation appears in the "subjective part of the patient report," and does not appear on the list of Pelichet's health problems, the Court cannot conclude Pelichet has been diagnosed with Stage 2 kidney disease.[9] (Doc. 66 at p. 7.) The government does not dispute that there is a lab test from April 13, 2020, indicating chronic kidney disease because of a GFR below 60. (Doc. 57, p. 53.) The government quotes the lab report noting, "A calculated GFR ‹60 suggests chronic kidney disease if found over a

---

[8] The government does not dispute that the notation "CKD Stage 2" stands for "chronic kidney disease Stage 2."

[9] The government also asserts that there is no record of a repeat lab test for GFR that would have supported a diagnosis of kidney disease. (Doc. 66 at p. 7.)

3 month period." (*Id.*) The government asserts that the Court should not conclude Pelichet has chronic kidney disease without additional GRF lab results. (Doc. 66, p. 7.) The government has not provided any evidence to show that the BOP records are inaccurate, and the Court has no reason to conclude the medical note stating that Pelichet has chronic kidney disease is wrong. The CDC lists chronic kidney disease as a diagnosis which puts a person of any age at increased risk of severe illness from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. This condition places Pelichet at an increased risk of severe illness if he contracts the coronavirus.

Pelichet suffers from hypertension. The government argues that his hypertension does not meet the standard of extraordinary and compelling circumstances for compassionate release because the records indicate it is controlled with medication. The CDC lists "hypertension or high blood pressure" as a condition that "might" increase a person's risk of severe illness from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC does not indicate that if a person's hypertension is controlled by medication they are not at risk, and the government cites no authority for this proposition. The Court concludes that Pelichet's hypertension might increase his risk of severe illness from COVID-19.

According to CDC data as of October 31, 2020, 46.6 percent of adult patients hospitalized with COVID-19 were obese, 59.1 percent had hypertension, and 16.1 percent suffered from renal disease. *See* COVID-19 Laboratory-Confirmed Hospitalizations – Preliminary data as of October 31, 2020, CDC COVID-NET, available at https://gis.cdc.gov/grasp/COVIDNet/COVID19_5.html (last accessed Nov. 10, 2020). Other evidence gathered by the CDC and cited by Pelichet shows people with obesity are 3 times more likely to require hospitalization if they contract COVID-19, people with hypertension are 3 times more likely, and people with chronic kidney disease are 4 times more likely, as compared to people without the conditions. https://www.cdc.gov/coronavirus/2019-ncov/downloads/covid-data/hospitalization-underlying-medical-conditions.pdf (last accessed Nov. 9, 2020)  People with both obesity and chronic kidney disease are 4.5 times more likely to require hospitalization for COVID-19.

These statistics -- which focus on the non-prison population -- become even more concerning

when considered in the prison context. Pelichet's experts explain that prison conditions are far more conducive to the spread of diseases such as COVID-19 than in the general public:

> Congregate settings such as jails and prisons allow for rapid spread of infectiousdiseases that are transmitted person to person, especially those passed by droplets through coughing and sneezing. When people must share dining halls, bathrooms, showers, and other common areas, the opportunities for transmission are greater. When infectious diseases are transmitted from person to person by droplets, the best initial strategy is to practice social distancing. When jailed or imprisoned, people have much less of an opportunity to protect themselves by social distancing than they would in the community. Spaces within jails and prisons are often also poorly ventilated, which promotes highly efficient spread of diseases through droplets. Placing someone in such a setting therefore dramatically reduces their ability to protect themselves from being exposed to and acquiring infectious diseases.

(Doc. 61, Ex. C, Declaration of Dr. Jaimie Meyer ¶ 9). Pelichet's obesity alone elevates his risk of severe illness from COVID-19, and the combination of his obesity, chronic kidney disease, and hypertension elevates his risk even more.[10] These medical conditions are particularly concerning while Pelichet is incarcerated where social distancing and increased hygiene are difficult. The Court concludes Pelichet's medical conditions while being incarcerated amount to extraordinary and compelling reasons for Pelichet's release from prison. *See*, *e.g*., *United States v. White*, 2020 WL 2557077, at *5 (E.D. Mich. May 20, 2020) (finding that defendant's hypertension and obesity and inability to provide self-care to minimize his risk of exposure to COVID-19 were extraordinary and compelling reasons for his compassionate release).

For all of these reasons, the Court concludes that extraordinary and compelling circumstances exist for Pelichet's compassionate release.

## III. Section 3553(a) Factors

Having found that "extraordinary and compelling reasons" justify reducing Pelichet's sentence to time served, the Court must also consider whether doing so would be consistent with the sentencing factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) ("the court . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a)"). The Court also must decide whether Pelichet would present a danger to the safety of any other person

---

[10] There is no showing that Pelichet's sleep apnea, reflux disease or low back pain increase his risk of severe complications if he contracts COVID-19.

or to the community, as provided in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13(2). Upon careful consideration of these factors, the Court concludes that Pelichet's sentence can be reduced without undermining the sentencing factors or presenting a danger.

Under section 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," considering:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence[s] and the sentencing range established for–

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . .;]

(5) any pertinent policy statement guidelines [issued by the Sentencing Commission . . .;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Noting that the Court already sentenced Pelichet below the Guideline range, the government argues generally that a further reduction would fail to promote respect for the law, provide just

punishment, afford adequate deterrence, protect the public from further crimes, and reflect the seriousness of his offense. The government's only specific arguments against a sentence reduction are that Pelichet has served only 43 percent of his sentence, and that an additional reduction would not be a deterrent and would be a disparity in sentencing as to other similarly situated individuals.

Though Pelichet had only served 43 percent of his full term as of September 22, 2020, he had served 51 percent of his statutory term (which takes into account good time credit), and he will be eligible to serve the remaining portion of his sentence on home detention on May 11, 2021. (Doc. 59, pp. 61-62.) Moreover, Pelichet would be closer to his release date if he had received credit for 5 months he spent in custody from May 9, 2019 through November 18, 2019, based on the same offense conduct at issue in this case.[11] (Doc. 61, pp. 14-15.) The FPD presented evidence that the State of Idaho gave Pelichet credit for this time toward his Idaho parole revocation and later contacted the BOP to explore ways to "return" the credit so that Pelichet would receive credit for this time toward his federal sentence, but to no avail. (Doc. 61, Exhibit D, Declaration of Attorney J. Talitha Hazelton.) The government does not dispute that Pelichet could have received 5 months of credit toward his time served on this federal sentence under different circumstances.

Pelichet's fraudulent conduct is a serious offense, and it is true that he had prior convictions for forgery and burglary, but none were crimes of violence or offenses involving controlled substances. Pelichet accepted responsibility, acknowledged the seriousness of his offense, and assisted the government in investigating the fraudulent scheme carried out at his place of employment. Furthermore, Pelichet has not had any disciplinary violations in custody.

Pelichet has a stable support system, as the Court has heard from his mother-in-law and father-in-law. (Doc. 61, Exhibits E and F.) And any risk of Pelichet engaging in further criminal conduct can be managed through the terms of supervised release. Accordingly, the Court finds that Pelichet does not pose a risk to others or to his community if released. *See United States v. Ladson*, 2020 WL 3412574, at *8–10 (E.D. Pa. June 22, 2020) (concluding defendant's strong family ties and stable home weighed against finding defendant a danger to the community).

At the time of sentencing Pelichet's wife had a serious illness and the Court departed and

---

[11] His projected release date is July 22, 2021. (Doc. 59, p. 61.)

varied downward for that reason. Unfortunately, she passed away in June of 2020. Pelichet's stepson works at the family-owned car dealership and both he and Pelichet's daughter (who recently graduated from high school) are struggling without their mother and father. (Doc. 61, Exhibits G and H.) The family's source of income is the small family-owned car dealership. It was described in the PSR prior to Pelichet's sentencing:

> The defendant has owned MVP Auto Sales in Boise since February 2016. He has two employees, one of which is his stepson Drake. The defendant earns approximately $6,000 per month. The business is registered and active since 02/24/2016 according to the Idaho Secretary of State website. Molly stated without the defendant's direction and guidance, the business has suffered. On average, they sold 30 cars per month; however, since the defendant has been incarcerated, they have sold approximately six cars per month.

(PSR ¶ 84.) In addition to providing financial support for the family, the business may allow Pelichet to pay restitution to the victims in this case if he can successfully manage it upon his release.

The Court has again carefully reviewed the sentencing factors in 18 U.S.C. § 3553(a) and concludes that requiring Pelichet to serve the remainder of his sentence for deterrence purposes or to protect from further crimes does not outweigh the increased risk of harm to Pelichet's health. Because Pelichet is at an increased risk of severe illness due to his medical conditions while being incarcerated during the coronavirus pandemic, any disparity between his original sentence and his early release is warranted. A sentence of time served is sufficient and not greater than necessary to comply with the purposes of section 3553.

When a court grants a sentence reduction, it "may impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). "In doing so, the court may modify an existing term of supervised release to add a period of home detention, only if it finds that home detention is a 'substitute for imprisonment.'" *United States v. Alvarado*, 2020 WL 3041504, at *2 (D. Minn. May 27, 2020) (citing U.S.S.G. § 5F1.2; 18 U.S.C. § 3583(e)(2) (providing that the court may "extend a term of supervised release if less than the maximum authorized term was previously imposed" and "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release")); *United States v. Spencer*, 2020 WL 5498932,

15

at *2 (6th Cir. Sept. 2, 2020) ("if the district court reduces a defendant's sentence under § 3582(c)(1)(A) to time served, it can impose a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home").

Pelichet would be eligible to serve the remaining portion of his initial sentence on home detention on May 11, 2021, and his projected release date is July 22, 2021. The Court finds home detention is a substitute for imprisonment in this case. The Court therefore reduces Pelichet's sentence to time served and requires him to serve a portion of his supervised release, until <u>July 22, 2021</u>, in home detention.

## CONCLUSION

The Court finds that extraordinary and compelling reasons exist for a sentence reduction in this case, and that a reduction would be consistent with the section 3553(a) factors. Accordingly,

**IT IS ORDERED**:

1. That defendant Calvin Pelichet's Motion for Compassionate Release, Doc. 49, is granted.

2. Pelichet's term of imprisonment is reduced to time served, subject to the following paragraphs.

3. Pelichet's three-year term of supervised release remains in place, and the Court re-imposes the terms and conditions of supervised release as set forth in the November 21, 2019 Judgment (Doc. 47) with the following amendments:

    a. The defendant shall serve supervised release on home detention until July 22, 2021, at the home in Idaho which has been approved by the United States Probation Office;

    b. During home detention, the defendant shall be restricted to his residence at all times except for employment.

4. All other terms in the original criminal judgment remain in effect.

5. The Probation Officer shall prepare an Amended Judgment to reflect the amended sentence.

6. Execution of this Order is stayed for fourteen days to allow the Bureau of Prisons and the United States Probation Office an opportunity to make the necessary

arrangements for Pelichet's release.

Dated this 24th day of November, 2020.

BY THE COURT:

_____
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

_____